Thank you, Your Honor. Stephen Lubliner on behalf of Appellant Jimmy Lazo. I will hope to reserve one minute for rebuttal. I will address the merits and then move on to prejudice. On the merits, I agree with the State Court of Appeal and the Attorney General. In a sense, the case was about very limited issue, problem of voluntary intoxication, the sub-issue of corroboration. Now, that's not what the prosecutor said, and I will come back to that, but standing alone, it's a correct observation. Hence, for this court on review, the claims have to be analyzed with that very narrow focus because most of the rest of the case could be tried by written stipulation. So we have to ask, did the ineffective assistance, how did that poison the very narrow issue? The prosecutorial misconduct, how did that poison the very narrow issue? Now, on what the prosecutor said, there is no way to get from what he said to the reasonable analytical statement that I just said because basically what he said was this case doesn't have the usual B.S. defenses the criminal case has. What's next, Mr. Goldman? We have to do something. I know you were too loaded to understand what you were doing. There's no principal difference between that argument and the Herring case that the State Court of Appeal distinguished where the prosecutor said he has to tell them what to say. He has to help them plan a defense. He does not want you to hear the truth. The prosecutor here was said, undeniably, no matter how you say it, defense counsel was making stuff up, putting words in his client's mouth, and that is misconduct, and because those scandalous remarks cut to the very heart of the case, voluntary intoxication, corroboration, it's a due process denial. Turning to the ineffective assistance issue, again, it's a very narrow issue. Anticipating problems with the defense, anticipating problems with the critical issue of whether or not Mr. Lazo's ingestion of the PCP could be corroborated. Now, it's undisputed from the record that the corroborating witness was a PCP-smoking probationer, and under those circumstances, her non-appearance was highly foreseeable from the outset, whether because she blew off the obligation, whether because she might take the Fifth, as I suspect she probably did, although we don't know, and the cases that we cite all say that competent counsel exercises caution under those circumstances, does not make critical promises on critical issues, whether that those critical issues are... What defense would your client have had if he hadn't had a corroborating witness to the PCP use? Well, he has the same defense of PCP use and voluntary intoxication. That's not out of the case, but it's like I believe it was the Anderson case where the defense was raised... But there's going to be a great deal of evidence that's going to come in suggesting that he was not on PCP at the time. But it would have been very powerful evidence in his defense to be able to provide somebody who said, I smoked PCP with Mr. Lazo on this occasion. Well, yes, it would have been very powerful evidence, just as I believe it's one of the cases we cite, the Anderson case. It would have been very powerful to have the psychiatrist come in and actually testify in a competent scientific way about the defendant's mental state and not just to rely on lay witnesses. Was Gonzalez subpoenaed? I'm not – it's not clear whether she was subpoenaed. I'm not sure, Your Honor. The record doesn't show it anyway. The principal issue here is not with non-appearance on this record. We don't know why she didn't appear and didn't testify. But that's the problem I have, because your – the issue you're raising is that counsel said she was going to appear in the opening statement, and then she didn't. So therefore, counsel was incompetent. And we – unless we know why she didn't appear, it's very hard to say that that was incompetence of counsel, because as Judge – as Judge Bivey suggested, there wasn't much else that – that could be said. Well, the cases we cite all say that when there are clearly foreseeable problems with the defense, with the potential appearance of witnesses, counts – competent counsel can lay out the defense that's going to be presented, but competent counsel exercises caution and does not make promises that are likely to explode in their face. Well, what do we know was in counsel's mind? What was counsel's motivation? I mean, it would be one thing if you could establish that he forgot to subpoena her. He just simply forgot that there was a witness, and that she – and you could show on habeas that she was available. Well, the problem is – And that she would have testified, but you can't show any of that. The problem is not with her not making it to the stand. The problem on this record, which comes from a direct appeal, not from an evidentiary hearing, is from making of the critical promise under the circumstances that we know that she's a witness. Do you have an affidavit? Do you have an affidavit from counsel in this case?  No, Your Honor. We don't have any idea as to why Gonzales didn't show up, whether she skipped him at the very last minute. He had assurance. He had given her bus fare. We know from the record mid-trial that she had a sick child. We know more critically that she was on probation, I believe, and conflict counsel was going to appear with her. If she has a sick child and can't make it to trial, does that make the counsel ineffective? Well, the sick child is not – You're looking for a per se rule that any time you have a witness that might not show up, that you cannot promise the jury the evidence on which that witness would offer. I'm not aware of any case that has ever come close to holding that. Do you have a case for us? I don't have a case. Well, in the Hampton case that we cite and in the other cases as well, they all say confident counsel, when the problems are foreseeable, exercises – What problem was foreseeable here? Was it foreseeable she was going to have a sick child? No, no, no. That's not the – she appeared with – she was going to appear with conflict counsel, and then I assume the issue was going to be whether she was going to take the Fifth or not. But she didn't take the Fifth. We don't know if she took the Fifth. She may not have shown up because she had a sick child. Are we – we're going to find a violation of the Sixth Amendment if the witness doesn't show up because she has a sick child? We're going to find a violation of the Sixth Amendment when the defense counsel promises a critical witness on what he has to know is going to be the critical sub-issue of the case, the absence of corroboration and whether or not it can be provided, when what he knows, and we know this from the record that we have, is that she was a PCP smoking probationer. Okay, but you're now asking for a per se rule. This woman may have been – she may have been clean at this point. She may have been on her way to rehabilitation. She might have been part of a requirement of her probation that she come forward and testify in the case. But you're asking us to create a per se rule, and you're here on AEDPA relief. So you need to have a clearly established Supreme Court precedent setting forth that point. Do you have anything to offer us? I don't have a clearly – I have – I mean, Strickland sets out the overarching framework of the case. In other cases, he's talking about what competent counsel is charged to do. This isn't really a misapplication of Supreme Court precedent case. It's an unreasonable determination of the issues in light of the facts of the record, which are the record that was before the trial court. And so the record before the – So you're – so your argument, you're not arguing that you have a clearly established Supreme Court case. So the California court hasn't – has not decided something in violation of clearly established Supreme Court law. Well – You're proceeding under the different prong of AEDPA, which is that the trial court made an unreasonable determination of the facts. Yes, Your Honor.  What facts did the trial court unreasonably determine? It's the court of appeal that the court of appeal unreasonably determined that counsel could have, because we're on – you know, for better or for worse, we're on direct appeal here. We're not coming out of habeas, so we're limited to the record that we know in the state court, that counsel could have had plausible reasons for making this promise during opening statement that this critical witness would appear. The court is wrong that there are no cases saying you can't be ineffective for making promises in opening statement. But on the facts, there is no plausible reason that could have been developed, say, if there had been state habeas proceedings for making that promise. And Your Honor is positive. Well, she could have had – she could have been rehabilitated. She could have been – she could have had a religious conversion and then gone up to him and say, well, I know this is how I was. I am no longer thus. I promise I will appear and not take the Fifth. And I submit that under those circumstances, it's still unreliable. It's still unreasonable behavior to promise this witness is going to appear on this dynamite issue when you know what the prosecutor is going to say. And at that point, counsel has violated the Sixth Amendment. Yes, Your Honor. By making that promise. By telling the jury that he's – that there will be a witness that he at that time – you can't establish he at that time had no idea wouldn't show. Not that he wouldn't – knew that she wouldn't show. I mean, that would be the – that would be the easier – certainly the easier case, but that there were substantial risks of her not showing. What is the heart of the case, and that's where the prosecutorial misconduct issue – bang, where was Jessica? Does she even exist? Well, of course, he knew she existed, but for the benefit of the jury, where was Jessica? He honed right in on that non-appearance. He honed in on it on his opening, and he honed in on it on his rebuttal. And that only proves, if there needed to be any proof, that the defense counsel had no reason to make that promise. Now, there was a very well-supported case on prejudice. Now, if this Court does not agree that Mr. Lazo was prejudiced on the record, it will be the first Court to do so. The State Court did not reach the issue. The district court did not reach the issue. I can lay out the timeline a little better because it's a little complicated. Thank you, Your Honor. Thank you. Good morning. May it please the Court. I think Your Honors have correctly pointed out that this is a situation where we have a tactical decision to bring someone up – to talk about a witness in opening, which is very common. There's always a risk that a witness might show up, not show up.  Sometimes there's chances of a witness not showing up. Sometimes they might be on probation. Sometimes they might get sick. They might be in a car crash and go to the hospital the day before they're supposed to testify. And to say that counsel's ineffective for talking about the witness in opening is not established Supreme Court precedent. And then the only other thing I would point out is that appellant talks about how critical this witness was and how it would corroborate the fact that the defendant smoked PCP that night. And if you actually read what was said in opening, the opening is that Jessica Gonzalez – he runs into another friend of his, Jessica Gonzalez. She's been clean and sober, but she knows what he's like under the influence of PCP because she smoked PCP with him, presumably in the past, and that she might talk about that he appeared to be under the influence. But he never promised that she actually saw him smoke the PCP on that night. Certainly that might be inferred by the jury, but there was never a distinct promise that she could even corroborate his story in and of itself. And he had the other corroboration. He had his buddy that he drank with who said, yeah, he probably went out and smoked that night. I've seen the smoke. His wife came in and said, he smokes often. So this was not, as in the cases cited by appellant, a complete withdrawal of a defense or that the key piece of the defense was gone or the defendant himself didn't testify. This was one extra corroborating witness to his defense, which, as is evidenced in the statement of facts, was extensively discussed. They brought in the DUI manual and talked to the officers and cross-examined them extensively about whether he was on PCP. So his defense was fairly presented, and it was a tactical decision by counsel to talk about a witness in opening statements, which is very common and not unreasonable. And because of unforeseen circumstances, that person didn't show up. And to say that that's ineffective, I think, is not proper. Otherwise, I'll submit it. Any further questions? Thank you. The matter just argued is submitted for decision.
judges: Panner, Schroeder, Bybee